Brooklyn Clothing Corporation, Respondent, *v.* Fidelity-Phenix Fire Insurance Company of New York, Appellant.

Brooklyn Clothing Corporation, Respondent, *v.* People's National Fire Insurance Company, Appellant.

Second Department, June 1, 1923.

Insurance — riot and strike insurance — action by bailee to recover for destruction of coats on which it was doing work for bailor — policy insured plaintiff's "interest in and legal liability for" property held "in trust"— bailee's interest does not include owner's interest in goods — legal liability covers contractual liability making bailee liable for loss of goods — defendant denied that plaintiff was liable to owner — issue was raised—summary judgment for plaintiff improperly granted.

A policy of insurance against riots and strikes issued to the plaintiff, who was engaged in the manufacture of coats from material furnished him by others, which insured the plaintiff's " interest in and legal liability for" property held by it " in trust or on commission or on joint account with others or on storage or for repairs," does not cover the owner's interest in goods delivered to the plaintiff but merely the plaintiff's interest which is the amount due for work and labor performed on said goods, and any legal liability which the plaintiff may have incurred by an agreement with the owner to be responsible for the goods delivered to him.

**744** BROOKLYN CLOTHING CORP. *v.* FIDELITY-PHENIX F. INS. CO.

Second Department, June, 1923. [Vol. 205]

The denial by the defendant of any knowledge or information sufficient to form a belief as to the alleged agreement between the plaintiff and the owner of the goods, together with the affidavit of the defendant's secretary, presented on motion for summary judgment to the effect that the defendant would show that the plaintiff was not liable to pay for the goods, raises an issue, since the plaintiff did not present proof by affidavit of the exact agreement between it and the owner of the goods, and it was improper, therefore, for the court to grant the plaintiff's motion for summary judgment.

APPEAL by the defendant, Fidelity-Phenix Fire Insurance Company of New York, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 23d day of May, 1922, granting plaintiff's motion for summary judgment, and also from the judgment in favor of the plaintiff entered in said clerk's office on the 25th day of May, 1922, pursuant to said order.

There were two separate actions on insurance policies against two separate defendants, the People's National Fire Insurance Company and the Fidelity-Phenix Fire Insurance Company of New York, but it was stipulated that one case on appeal might be made to serve for both actions, and accordingly the only papers presented are those in the case of the Fidelity-Phenix Company. The plaintiff's complaint alleges that the plaintiff agreed with the Fox Manufacturing Company, owner of a quantity of coats, to perform work, labor and services on the goods for a consideration stated, and to supply trimmings for them. It was also agreed, as the complaint alleges, " that the plaintiff would be liable to the said Fox Manufacturing Company in the case of loss, damage or injury to said coats." In pursuance of the agreement the coats were delivered into the custody and possession of the plaintiff.

It is also alleged that upon payment of a premium of $37.50 the defendant delivered to plaintiff a policy insuring plaintiff against " all direct loss or damage " to the coats as the result of any of several causes, one of which was riot and " Civil Commotion, including strike." A further allegation is that on May 27, 1921, while the contract of insurance was in force and while the coats were in plaintiff's possession, a riot and civil commotion, occurring in plaintiff's premises, resulted in loss and damage to the coats in the sum of $1,041.80, the items of damage being as follows: $250.80 for work performed by the plaintiff, prior to the damage, on a number of the coats; $760 representing the value of coats totally destroyed, and $31 representing labor expended in repairing thirty-one coats that were partially damaged. There are allegations that plaintiff fully performed its part of the contract and that notice and proof of loss were served on defendant, but that plaintiff has failed to pay the said sum of $1,041.80 or any part thereof.

The affidavit of plaintiff's president, read in support of the motion, is silent as to plaintiff's agreement to be liable to the Fox Company for loss, damage or injury to the coats, except that it reiterates and realleges the allegations of paragraphs 4th, 5th, 7th and 8th of the complaint. It does allege, however, that by reason of loss and damage the plaintiff "was obliged" to pay the Fox Company $760. The supporting affidavit of William Fox, who deposed that he does business under the name and style of the Fox Manufacturing Company, is also silent as to the alleged agreement of plaintiff to be liable to him for loss or damage. It states that Fox had "no insurance whatever protecting said coats from loss by riot or civil commotion;" that plaintiff neglected and refused to return 152 of the coats, stating that they had been destroyed in a riot or civil commotion; and that "upon an adjustment of accounts between the deponent and the plaintiff, the deponent charged against the indebtedness for the work performed for him by said corporation, the sum of Five ($5.00) Dollars per coat for each coat not delivered as aforesaid; * * * making the total amount so charged by the deponent against the plaintiff and deducted from deponent's payment to the plaintiff the sum of" $760.

The defendant's answer consists of a series of denials on information and belief, or of knowledge or information sufficient to form a belief, as to most of the allegations of the complaint; and concerning such allegations, as, for instance, that the Fox Company was the owner of the coats, or as to the compensation the plaintiff was to receive for its work, or as to the liability for loss assumed by plaintiff in its alleged agreement with Fox, or as to damages, it is difficult to see how the denials could be more specific. As an affirmative defense the defendant alleges that the policy issued to plaintiff covered insurance against direct loss or damage, caused by civil commotion, on "the contents of the building No. 1594-8 East New York Avenue, Borough of Brooklyn, City of New York, except as were therein excluded, owned by the plaintiff or sold but not removed, also on plaintiff's *interest in and legal liability for* property held by plaintiff as follows, viz.: 'in trust or on commission or on joint account with others or on storage or for repairs.'" It is admitted that a riot or civil commotion did occur in plaintiff's premises, that certain property therein was damaged or destroyed, and that plaintiff had expended upon such property work, labor and services of the reasonable value of $250.80. It is alleged on information and belief that plaintiff "had no interest in or legal liability for the said property which was not held by it in trust or on commission * * * or on storage or for repairs." For a

746   Brooklyn Clothing Corp. *v.* Fidelity-Phenix F. Ins. Co.

Second Department, June, 1923.                    [Vol. 205

partial affirmative defense it is alleged that because of plaintiff's insurance with the People's National Fire Insurance Company, defendant's liability for plaintiff's loss of $250.80 is the sum of $150.48, with interest, which amount, together with costs to date, defendant pays into court.

The affidavit filed in opposition to the motion is by defendant's secretary, who deposes that he is advised by counsel and verily believes that defendant has a good and substantial defense to the action. He refers to the liability-limiting clause in the insurance policy, set out in the answer and heretofore quoted, and continues:

" The defendant will show on the trial of the action that the property described was not held by the plaintiff under any of the exceptions set forth in the policy and that there is absolutely no valid claim under the policy as issued beyond the amounts tendered, which tender covers the amounts put into the goods by the plaintiff themselves for labor and material, for which items the defendant has accepted plaintiff's own figures and is willing to pay such sum to the plaintiff. Those amounts are the only amounts covered by the insurance. The other amounts are really amounts for loss sustained only by William Fox."

*B. Leo Schwarz* [*Samson Selig* with him on the brief], for the appellants.

*Albert Conway*, for the respondent.

Kelby, J.:

A bailee may insure in his own name, for their full value, the goods intrusted to him, and upon proof of loss he may recover the full value, not exceeding the sum insured, holding the remainder, after deducting his own loss, as trustee for the bailor. Such a policy covers the merchandise itself and not merely the interest or claim of the bailee for account of the bailor. (*Stillwell* v. *Staples*, 19 N. Y. 401; *Home Insurance Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527; *Rohrbach* v. *Germania Fire Ins. Co.*, 62 N. Y. 47, 54.) And the bailee need not specify the nature of his interest in the property. (*Phœnix Insurance Co.* v. *Erie Transportation Co.*, 117 U. S. 312.) But here the bailee was insured under a policy that limited the insurance to the bailee's *interest in and its legal liability for* property held by it *in trust*. It is clear that the goods were not held by plaintiff in any of the ways specified in the policy, except " in trust." Goods held by a bailee for account of his bailor are held in trust. (*Stillwell* v. *Staples, supra.*) What was the plaintiff's " interest in and legal liability for " the property of the Fox Company held by it in trust? It is argued by the plaintiff that the word " interest " means all of the plaintiff's

insurable interest, which in turn would embrace the plaintiff's own interest in the goods and the interest of the Fox Company in the goods left with plaintiff to have work done upon them. It seems clear that the plaintiff was insured, *first*, on goods that were owned by it; *second*, on goods which had been owned by it but which were sold but had not been removed from its premises; *third*, for its own interest in the property of others upon which it was at work. The only interest plaintiff had in the goods of the Fox Company was the value of the work and material that it had put into them. If the words " their interest in " had been left out of the policy, it is quite clear that this insurance, no matter what its nature, whether fire, riot, commotion or otherwise, would have inured to the benefit of the owner of the goods under the cases above cited. But with these words of limitation in, it cannot be held that the *owner's* interest in the goods is covered by the word " interest."

There remains the other clause in the policy, or " their legal liability for similar property held by them * * * in trust." What was the legal liability of the plaintiff to the Fox Company for goods left with the plaintiff as bailee? It is urged by the defendant that the only thing that a bailee is liable to a bailor for is the bailee's negligence. It is a familiar rule of law that when a bailor calls upon the bailee for the delivery of goods theretofore intrusted to him, the non-production of the goods raises a presumption of negligence on the part of the bailee. This presumption can, however, be rebutted by showing that the goods were destroyed by fire, or by theft, providing the fire or the theft was not occasioned by the bailee's negligence. Strictly, however, the bailee is never liable to the bailor except for the bailee's negligence. It will be noted, as above stated, that this policy was supposed to indemnify the assured against loss of property caused by riot and civil commotion. If the defendant's construction of the policy prevails, it was receiving premiums for insurance upon which there never could be any legal liability. In fact the defendant urges that the bailee here cannot be liable for riot in any event, and that it is liable for negligence only. By the same token the defendant admits that it was receiving part of the premiums for insurance upon which there was no legal liability on its part. This construction should not be permitted. It seems quite reasonable that people engaged in business such as the plaintiff, rather than suffer a loss of custom, would agree with the owner of the goods that on failure to produce the goods they would reimburse the owner for their value. The words " legal liability " in this policy must be held to embrace the contractual liability which the plaintiff assumed on receipt of the goods from the owner. This construction

**748** Brooklyn Clothing Corp. *v.* Fidelity-Phenix F. Ins. Co.

Second Department, June, 1923. [Vol. 205

is adopted solely because of the evidence of the character of the insurance; otherwise the policy means nothing at all concerning the plaintiff's interest in the goods of the owner.

As to this question, namely, whether plaintiff agreed with the owner to become liable for the goods, has a question of fact been raised by the pleadings and papers? If it has, the court erred in granting summary judgment; for such a judgment can be granted only when no issue of fact is presented. (*Dwan* v. *Massarene*, 199 App. Div. 872.)

On its part the plaintiff makes the bare statement that " it was further agreed that the plaintiff would be liable " to the owner in case of loss, damage or injury to the coats. It presents no proof of such agreement, and it makes no mention of it, either in the affidavit of its president or the affidavit of William Fox, except that in his affidavit the president " reiterates and realleges the allegations " of paragraph 4th of the complaint, which is the paragraph that contains the allegation in question. The defendant on its part, in the answer, denies that as to the alleged agreement it has any knowledge or information sufficient to form a belief; such form of denial being doubtless the only one that it was in a position to make. The affidavit of defendant's secretary states that on the trial it will present evidence to show, among other things, that the plaintiff had no legal interest in or no legal liability for the property.

The defendant's denial is at least as strong and as plausible as the plaintiff's affirmation. Where a plaintiff's allegations are unsatisfactory and are made as to matters concerning which the defendant could not be expected to have knowledge, the defendant should not be penalized for denying them in the only manner possible to him. It may be that upon a trial the plaintiff would not be able to convince the jury that it did agree with the owner to extend its liability beyond the legal liability of a bailee who receives goods for the purpose of doing work upon them. It may be that the defendant would be able to show, by cross-examination or otherwise, that there was no such agreement.

In *Chelsea Exchange Bank* v. *Munoz* (202 App. Div. 704) the court cites the English case of *Saw* v. *Hakim* (5 T. L. R. 72) and quotes: " The general principle had been laid down, that if a fair case for a defense was made out by the defendant, unless it was displaced by some undoubted documentary evidence, as an account showing a balance due or a letter promising to pay, the defendant ought to be allowed to defend. * * * It was an action in which there was *prima facie* a case for the plaintiff and *prima facie* a case for the defence and then as to facts the affidavits were entirely contradictory." In *Saw* v. *Hakim* there was a concurrence by

MANISTY, J., who said: " He had the greatest distrust of affidavits upon disputed questions of fact and would never consent to try such questions upon affidavit."

*Peninsular T. Co., Inc.,* v. *Greater B. Ins. Corp., Ltd.* (200 App. Div. 695) holds: " Plaintiff's motion under rule 113 of the Rules of Civil Practice for summary judgment and to strike out the answer should not have been granted in an action on a policy of insurance issued to the plaintiff as owner of a schooner, where it appeared that there were issues duly joined with respect to the subject and amount of the insurance and the cause and extent of the loss which cannot be determined summarily on conflicting affidavits, * * *. A motion under rule 113 * * * should be denied, unless it is perfectly plain that there is no substantial issue to be tried, * * *." One of the cases cited in the last quoted case is *Lloyd's Banking Co.* v. *Ogle* (L. R. [1876] 1 Ex. Div. 262), where BRAMWELL, B., writes: " Had this matter come before me in the first instance, I think I may say that I should not have made this order, for the power to sign judgment was, in my opinion, intended to apply to those cases *which almost on the admission of the defendant are undefended,* and not to cases in which the defendant might reasonably say, ' I do not know if your case is well founded or not, but I require you to prove it.' "

The appellant makes the claim, also, that " the plaintiff fixes the value of the goods and of his interest therein to suit himself;" and that as defendant has denied all of this, the plaintiff's claim is not a liquidated claim.

The judgment and order should be reversed on the law, with costs, and the motion for judgment denied.

KELLY, P. J., MANNING, YOUNG and KAPPER, JJ., concur.

Judgment and order reversed on the law, with costs, and motion for judgment denied.