On July 21, 1943, the defendant was engaged to weld a broken spring hanger on the plaintiff's bulldozer. The machine was in use at a housing project on Oakwood Avenue in West Hartford. It was arranged that the welder come to the location of the machine at 4:30 p. m., after its use had been discontinued for the day. On the day in question the defendant's employee came to the location of the machine at the appointed time and was told by the plaintiff's operator of the machine that he could proceed with the welding. He prepared his equipment, crawled under the bulldozer and began the welding work. After a minute or so, he felt heat coming from the rear of the machine and, upon turning around, found flames *Page 8 
emanating from the motor. The gas tank and gas line were located on the opposite side of, and three feet distant from, the spring hanger, and were in good condition. The spring hanger had a small quantity of grease on it which was not dangerous and did not interfere with the work. The grease on the spring hanger had nothing whatever to do with the fire. The fire had, apparently, started in the motor from an unexplainable cause.
The plaintiff claims to be entitled to recover for the fire damage because (1) the transaction constituted a bailment, and (2) the defendant's agent was negligent in performing the work on the bailed property. The defendant claims that (1) there was no bailment, and (2) the defendant's agent used ordinary care in performing the work in question.
Whether or not the transaction created a bailment is determined by the degree of custody or control given the defendant. If possession of the machine was delivered to the defendant under a contract to return it to the plaintiff according to the terms of the agreement, it constituted a bailment. Murray v.Paramount Petroleum Products Co., Inc., 101 Conn. 238,242. From the moment it was turned over to the welder it passed into his exclusive custody and control, and was effectively removed from the possession of the plaintiff into the possession of the defendant. The facts here cannot be harmonized with the Murray case or with Seedman v. Jaffer, 104 Conn. 222, wherein possession was constantly in the plaintiff and no custody or control ever exercised by the defendant. A similar situation arose in the case of Zeterstrom v. Thomas, 92 Conn. 702,704, where the court found that there was not "a delivery of goods in trust, upon a contract, expressed or implied, that the trust shall be duly executed, and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered." In the instant case all the elements of a bailment are present and the defendant's liability must depend on his conduct as bailee.
To hold the defendant responsible for the fire calls for the adoption of a rule of law that an inference can be drawn from certain facts whose determination is the result of other inferences. It would be necessary to infer that the fire started from sparks emanating from the welding torch and to further infer that the starting of the fire by the sparks was due to the want *Page 9 
of care imposed, by law, on a bailee. This principle of law has been sanctioned by our Supreme Court in the case of Ruerat v.Stevens, 113 Conn. 333, where the trial court drew the inference that, in the absence of evidence of any other possible origin of the fire, the defendant's cigarette must have caused it, and then drew the further inference that it could not have happened unless there had been a want of due care on his part. The building of inference upon inference does not, necessarily, promote the construction of a "cob house of inferences," as was the case in Levidow v. Starin, 77 Conn. 600, 603, but may be implemented as a rule of caution, the true function of which is to guide the court in determining whether evidence offered establishes a reasonable probability that certain things must have happened. Sliwowski v. New York, N. H. H.R. Co.,94 Conn. 303.
In the absence of evidence on the origin of the fire and on the care used by the welder, the court could follow the Ruerat
case and infer that the fire was started by sparks from the welder's torch, and then proceed to the further inference that it could not have happened unless the defendant had defaulted in his duty as bailee. In this case, however, the court cannot draw the latter inference unless the evidence of three reliable expert witnesses that the welder exercised the care of a skilled mechanic and followed the accepted custom and general usages prevailing in his business be disregarded.
The general rule is that the failure of a bailee to perform his contract to return the goods raises a presumption that their nonproduction is due to the negligence of the bailee, and by proof of such nonproduction the bailor makes out a prima facie case of negligence, which may be overcome by the bailee by any explanation which will satisfy the trier that the loss was not due to his failure to exercise reasonable care in the custody of the good. Murray v. Paramount Petroleum Products Co., Inc.,
supra; Brooklyn Clothing Corporation v. Fidelity-Phenix FireIns. Co., 205 App. Div. (N. Y.) 743, 747. "In such a situation the policy of the law requires that, unless the defendant proves the actual circumstances involved in the loss of the goods, the plaintiff should prevail; if the defendant does prove those circumstances, then the burden of showing that upon the whole case he was negligent rests upon the plaintiff." O'Dea v.Amodeo, 118 Conn. 58, 63. *Page 10 
The facts in the instant case fail to disclose any reason for greater precaution than was taken by the welder. There was no evidence of "raw gas," the gas tank and gas line were in perfect condition, their location, three feet from the welding point, removed them from spark hazards, the quantity of grease about the spring hanger was small and not highly inflammable or dangerous and the fuel oil tank was in the rear of the machine and away from the sphere of danger. All of these conditions were observed by the welder before he began welding. His conduct has been described by experts in the business, as proper and wholly consistent with the general practice prevailing in the business. The mere fact that he was working with a torch on a machine containing inflammable substances does not, necessarily, mean he should have foreseen the danger of fire. LancashireShipping Co. v. Morse Dry Dock Repair Co., 43 F.2d 750. Under such circumstances it must be held that the bailee is not liable unless the facts present in this case do not constitute ordinary care.
Where a bailment is for the mutual benefit of both parties, the bailee, in the absence of a special contract, is held to the exercise of ordinary care in relation to the subject matter thereof and is responsible only for what has been termed ordinary negligence. 8 C. J. S. 269; Baxter v. Shanley-Furness Co.,193 Cal. 558; Moon v. First National Bank, 287 Pa. 398; Wellberg
v. Duluth Auto Supply Co., 146 Minn. 29.
Our courts have adopted this theory of a bailee's liability and have repeatedly held that in a bailment of mutual benefit for the repair of an article bailed the bailee impliedly agrees to use ordinary care in the performance of the services he expressly agrees to do, and ordinary care would require the bailee to use such skill and care in performing the services as the ordinary skillful worker in his particular line of business would use in doing the work. Douglas v. Hart, 103 Conn. 685; Russell's Express,Inc., v. Bray's Garage, Inc., 94 Conn. 520; Holcomb Co.
v. Clark, 86 Conn. 319.
The standard of ordinary care by a bailee is established by competent testimony on the custom and general usages prevailing in his business; Gurfein v. Rickard, 92 Conn. 604; Webber
v. Bank of Tracy, 66 Cal.App. 29; and has been defined as the care which a capable and reasonably prudent person engaged in the same business is accustomed to exercise. Dodge v. Nashville, *Page 11 C. St. L. Ry. Co., 142 Tenn. 20. It means that degree of care, attention, or exertion which, under the circumstances, a man of ordinary prudence and discretion would use in reference to the particular thing, were it his own property. It requires that degree of care which reasonably may be expected of one in the given circumstances; that degree of care and prudence which discreet persons, skilled in the business in hand, would be likely to exercise under the same circumstances. Pan-AmericanPetroleum Transportation Co. v. Robins Dry Dock RepairCo., 281 F. 97; Litchfield v. White, 7 N.Y. 438.
It was incumbent on the defendant, having been intrusted with the bulldozer for the purpose of repair, to observe ordinary or reasonable care in the preservation of the property, and loss or injury to the property would create liability only if it resulted from his negligence, but would create no liability in the absence of proof of negligence. Devinne Hallenbeck Co., Inc. v.Autoyre Co., 113 Conn. 97; Rife v. Buchheim, 186 N.Y.S. 519; Rosenberg v. Wilke Laundry Co., 179 N.Y.S. 731.
The unchallenged testimony of Fuller, Duncan and Casavant, all experienced welders of many years, is competent to establish the exercise of ordinary care and the absence of negligence in repairing the machine, and successfully overcomes the presumption of negligence.
 The issues are found and judgment may be entered for the defendant.