Pursuant to 606 of the Practice Book, both of these actions have been joined and combined for the purpose of this appeal. There is very little dispute about the material facts in these cases. The plaintiffs were employed by the defendant in its commercial department located on the second floor of a two-story structure maintained by it in the North Meadows area of Hartford. The plaintiffs were not permitted to leave their coats by their desks or in their working area. Because there were no facilities available for the plaintiffs' coats on the second floor, they were assigned one of two areas on the first floor. On November 29, 1972, the plaintiffs left their coats in one of the areas on the first floor. They were unable to see their coats in the coatroom from their working area on the second floor. The location of the coatroom in question was primarily for the convenience of the defendant. On that date, after working from 8 a.m. to 8 p.m., the plaintiffs discovered that their coats were missing from the area on the first floor where they had been left after the plaintiffs returned from lunch at 2 p.m.
No charge was made by the defendant to the plaintiffs for hanging their coats, nor did the defendant have an attendant or custodian on duty at the coatroom to receive the coats. The plaintiffs knew that the area in which they hung their coats was unguarded. On the day in question members of the general public had access to the coatroom and the building until 5 p.m. without being required to show identification. After 5 p.m., ingress to the building could only be obtained by ringing a bell and showing identification. The coatroom in question did not have security supervision from 2 p.m. to 5 p.m. on November 29, 1972, nor was there evidence that a security guard was in fact on the premises between 5 p.m. and 10 p.m. The one security *Page 542 
guard at the location each day between 5 p.m. and 10 p.m. was responsible for 35,000 square feet, four acres of property and 175 parking spaces. The security measures taken were for the benefit of the defendant and not for the protection of the employees' personal belongings. Prior to moving into the North Meadows area in 1969, the defendant discussed various security measures to be taken, including the security of employees' coats, but no such measures were taken because it was decided they would be counterproductive. The defendant refused to reimburse the plaintiffs for the loss of their coats.
One of the assignments of error presented by the defendant is the failure of the court to correct the finding. The defendant's motion to correct the finding is quite voluminous and fails to comply With 567G of the Practice Book, which limits that motion to a consideration of the subordinate facts. Much of the defendant's motion is concerned with the conclusions of the court and claims made by the defendant, as well as claims made by the plaintiffs. The purpose of the finding is to show that conclusions reached by the trial court on conflicting testimony, if reasonably reached, must be accepted. National Broadcasting Co. v. Rose,153 Conn. 219, 223; State v. Skinner, 132 Conn. 163,166. We cannot find that any of the corrections sought by the defendant would be of any benefit to it.
The principal issues raised by the defendant are whether the court erred in concluding that a bailment was created, in finding that the defendant presented no evidence of the actual circumstances of the loss, and in not considering the question of the degree of care exercised by the defendant.
Whether an arrangement between employer and employee for storing personal property during working hours, such as the one revealed by the facts *Page 543 
in this case, gives rise to a bailment is an issue of first impression before this court. The essential element of bailment is the express or implied assumption of control over the property by the bailee. Mac-Aire Aviation Corporation v. Corporate Air, Inc., 6 Conn. Cir. Ct. 238, 252. See Malone v. Santora, 135 Conn. 286, 290; Brown, The Law of Personal Property 74 (2d Ed.). "Whether or not [a] transaction create [s] a bailment is determined by the degree of custody or control given the defendant." E. B. McGurk, Inc. v. Fuller,14 Conn. Sup. 7, 8. Applying that principle to the instant case it is apparent that the defendant required the plaintiffs to leave their coats in the first-floor coatrooms and prohibited them from bringing their coats into their working area on the second floor. The defendant had knowledge that during working hours the plaintiffs' coats, together with the coats of other employees, would be left in those areas specifically designated by it. By requiring its employees to comply with that procedure the defendant implicitly assumed exclusive, albeit temporary, custody and control over their personal property during working hours. The trial court correctly concluded that the plaintiffs surrendered custody and control of their coats to the defendant during working hours thereby creating a bailment.
Other courts have reached the same result on similar facts. When an employee was instructed to leave her coat in an unlocked closet one floor above the floor where she worked and was not allowed to bring her coat into her working area, the court found that a bailment was created. "It was to her employer's interest to have her coat kept out of the way. . . . The deposit of her coat in the place specified was thus a condition of her employment." Schleisner Co. v. Brichett, 202 Md. 360, 364. Similarly, where a restaurant required waitresses, as *Page 544 
part of their work, to wear uniforms and provided a rack and lockers where the waitresses changed into their uniforms and left their personal property, the court held that there was a bailment relationship between the restaurant and the waitresses. Grana v. Security Insurance Group,72 Misc.2d 265 (N.Y.). In Grana the court relied on an earlier case where a bailment relationship between employer and employee had been found. The court said: "There was an express invitation to plaintiff, held out by defendants, to place her coat in the dressing room and thus yield her personal vigilance during her working hours. There was a bailment." Kampf v. Yokell, 267 App. Div. 914
(N.Y.). Finally, in a recent case where an employer required its employees to furnish their own tools and knew the tools were left on the premises, the employer conceded that it was a bailee of the employees' tools. Johnson Towers Baltimore, Inc. v. Babbington, 264 Md. 724.
We are in agreement with the trial court that the bailment in the instant case was one for mutual benefit. The standard of care required of a bailee in a mutual benefit bailment is due care. Barnett Motor Transportation Co. v. Cummins Diesel Engines of Connecticut, Inc., 162 Conn. 59, 63. When a bailor establishes that his property has not been returned, however, a presumption arises that the loss of the bailed property was due to the bailee's negligence, notwithstanding the standard of care to which the bailee is held. Id., 63; National Broadcasting Co. v. Rose, 153 Conn. 219,225. In order to rebut the presumption, the bailee must prove "the actual circumstances involved in the loss of the property." Barnett Motor Transportation Co. v. Cummins Diesel Engines of Connecticut, Inc., supra, 64. "The isolated fact of destruction by fire or of loss *Page 545 
by theft rebuts nothing. The bailee must prove something more if he is to overcome the presumption. He must prove the actual circumstances connected with the origin of the fire or the theft, and these include the precautions taken to prevent the loss." Frissell v. John W. Rogers, Inc.,141 Conn. 308, 312. "The proof must go so far as to establish what, if any, human conduct materially contributed to that immediate cause." Leake 
Nelson Co. v. W. J. Megin, Inc., 142 Conn. 99, 103.
Whether the bailee has proved the actual circumstances of the loss and rebutted the presumption of negligence is a question for the trier of fact. Barnett Motor Transportation Co. v. Cummins Diesel Engines of Connecticut, Inc., supra, 64. Although there was testimony by the plaintiffs that their coats were "stolen" and testimony on behalf of the defendant regarding security measures taken for the protection of its premises, we cannot say that the trial court erred in finding that the defendant failed to rebut the presumption of negligence. No evidence was presented as to the conduct that materially contributed to the loss and the evidence of security measures instituted by the defendant does not establish conclusively that it fulfilled the duty of using reasonable care to prevent the plaintiffs' loss. The trial court correctly concluded that the defendant failed to rebut the presumption of negligence on its part as bailee.
Finally, the defendant has assigned as error the denial of its motion for summary judgment. It is unnecessary to consider that assignment of error inasmuch as the judgment of the trial court is being upheld.
 There is no error.
In this opinion SPEZIALE and D. SHEA, Js., concurred.